IN THE UNITED STATES DISTRICT COURT
OF THE SOUTHERN DISTRICT OF MISSISSIPPI
WESTERN DIVISION

AFNB HOME CARE, LLC                                            PLAINTIFF

VS.                              Civil Action No.: 5:25-cv-23-DCB-BWR

LATASHA BURKS; SECOND CHANCE
PERSONAL CARE AND RESPITE, LLC; and
LENDING LOVE, LLC                                            DEFENDANTS

<u>ORDER AND MEMORANDUM OPINION</u>

This matter comes before the Court on Defendant Lending
Love, LLC's ("Lending Love") Motion to Dismiss. [ECF No. 38].
Defendant moves that this Court dismiss Plaintiff AFNB Home
Care's claims against Lending Love pursuant to Fed. R. Civ. Pro.
12(b)(6). <u>Id.</u> at 4. The Court notes that Defendant filed both
the motion and a memorandum in support [ECF Nos. 38, 39], to
which Plaintiff filed a response and memorandum in opposition
[ECF Nos. 46, 47]; however, Lending Love did not file a reply to
AFNB's response. Under local rules, Lending Love had seven days
after the filing of AFNB's response to file a reply. S.D. Miss.
L.R. 7(b)(4). This deadline passed on July 3, 2025. In
considering this motion, the Court takes into account the
filings associated with Defendant's motion and Plaintiff's
response.

For the reasons discussed below, this motion to dismiss is
DENIED.

I.    Background

Plaintiff AFNB Home Care ("AFNB") brings this suit against its former employee Latasha Burks and competitors Second Chance and Lending Love. Against Ms. Burks, AFNB brings a claim for willful breach of her employment agreement with AFNB, specifically her agreement not to compete. [ECF No. 21] at 13. AFNB also brings claims against all defendants for violation of the Mississippi Uniform Trade Secrets Act ("MUTSA"), intentional interference with a business contract, and tortious interference with business relations. Id.

AFNB "provides comprehensive home health care services across Louisiana, Mississippi, and Arkansas," and employed Ms. Burks from September 24, 2024, through February 17, 2025, when she was terminated for cause. Id. ¶¶ 2, 7. Plaintiff claims that after her termination, Ms. Burks, "in direct breach of the non-compete/non-solicit provisions of her Employment Contract and the Handbook, immediately began a business relationship with Second Chance and Lending Love . . . with the improper and intentional motive of soliciting former AFNB employees and clients to associate with Second Chance and Lending Love." Id. ¶ 15. Second Chance and Lending Love are direct competitors with AFNB "for clients in the same area of service, in Mississippi counties where AFNB maintains offices and adjoining counties,

and within a 50-mile radius of locations where Ms. Burks performed her duties for AFNB." Id. ¶ 14.

AFNB's claims against Ms. Burks arise out of her alleged failure to abide by the non-compete agreements in her offer letter and the employee handbook, both of which she signed. Id. ¶ 7. Ms. Burks's duties to AFNB, as laid out in the employee handbook, are as follows:

> Employees may have access to AFNB confidential, proprietary or trade secret information. This information may include but is not limited to client contact, medical, financial or other information; company procedures, pricing or other financial information; employee contact, payroll and other information; computer files, programs and software; legal opinions or memoranda; referral contacts, sources and information; and business development and marketing strategy.

> These types of information, and any information not generally known outside AFNB and that would be valuable to a competitor, are valuable, confidential and the exclusive property of AFNB. Employees must not use or disclose this information either during or after Employee's employment with AFNB. **This prohibition includes but is not limited to the requirement that employees may not use AFNB's confidential, proprietary or trade secret information to solicit AFNB's clients, employees or referral sources during or after their employment with AFNB.**

> Employee also must not use or disclose any confidential, proprietary or trade secret information of any of their former or concurrent employers in the employees' performance of their work with AFNB. AFNB strictly prohibits any such use or disclosure of others' confidential, proprietary or trade secret information.

[ECF No. 21-1] at 12-13.

The Handbook, signed by Ms. Burks on September 24, 2024, also contains a non-compete/non-solicit provision that states

that for eighteen months following termination of employment, "she shall not for herself or in conjunction with any person, partnership, corporation, or other entity induce, entice, hire, or attempt to hire or employ an employee of AFNB or solicit work from any past or present customer of AFNB." [ECF No. 34] at 2. The Handbooks provisions apply "within the counties where AFNB has an office and bordering counties to that office in the state of Arkansas or Mississippi." Id. at 3 (quoting [ECF No. 21-1] at 14). In the offer letter, signed October 3, 2024, Ms. Burks also agreed to abide by an agreement not to compete or solicit employees or clients of AFNB. Id. By signing the offer letter, Ms. Burks agreed not to disclose confidential information and not to violate the non-compete/non-solicit provisions within a fifty-mile radius of any location where she worked while employed with AFNB. Id. (citing [ECF No. 21-2] at 2.

AFNB's allegations against Second Chance and Lending Love include "knowingly profit[ing] from their acquisition of AFNB's trade secrets from Ms. Burks" and "ignor[ing] Ms. Burks' violations of her Employment Contract and AFNB Handbook policies in order to gain a market advantage and increase their profits." [ECF No. 21] ¶ 41, 43. The "trade secrets" which the Defendant companies allegedly obtained include at least some of the following: "client or customer names, projections, prospects,

4

financial conditions, operations, assets and liabilities of AFNB." Id. ¶ 38.

AFNB further alleges that Second Chance and Lending Love "have intentionally interfered with Ms. Burks's contract with AFNB by inducing Ms. Burks to violate its terms," "by inducing Ms. Burks to entice AFNB clients to enter into contracts for home health services with Second Chance or Lending Love," and by inducing Ms. Burks "to approach AFNB clients and employees with the particular purpose of causing damage and loss to AFNB whether through Ms. Burks's misrepresentations to AFNB's clients and employees or other improper means." Id. ¶ 50-51, 53. Specifically, AFNB alleges that the defendants have worked together to steal forty of AFNB's clients. Id. ¶ 52. AFNB's claim for tortious interference with contract claims that "[e]ither by treating her as an employee or an independent contractor, Second Chance and Lending Love paid Ms. Burks for her unlawful efforts to harm AFNB." Id. ¶ 71.

Lending Love now moves for dismissal of the First Amended Complaint against Lending Love under Rule 12(b)(6). [ECF No. 39] at 4.

II.  Legal Standard

Rule 12(b)(6) of the Federal Rules of Civil Procedure allows defendants to move to dismiss a case due to the plaintiff's

failure to state a claim upon which relief can be granted. To avoid dismissal, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" In re Great Lakes Dredge & Dock Co. LLC, 624 F.3d 201, 210 (5th Cir. 2010) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). The factual allegations in a complaint must be enough to raise the right to relief above the speculative level. See, e.g., Twombly, 550 U.S. at 555; Great Lakes Dredge, 624 F.3d at 210. The Court must "accept all well-pleaded facts as true and construe the complaint in the light most favorable to the plaintiff." Great Lakes Dredge, 624 F.3d at 210.

In motions made under Rule 12(b)(6), "[t]he court's review is limited to the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." Ironshore Europe DAC v. Schiff Hardin, LLP, 912 F.3d 759, 763 (5th Cir. 2019). The Court may also consider matters of public record, Davis v. Bayless, 70 F.3d 367, n. 3 (5th Cir. 1995), and any other matters of which it may take judicial notice. Funk v.

Stryker Corp., 631 F.3d 777, 783 (5th Cir. 2011). "If, on a
motion under Rule 12(b)(6) . . ., matters outside the pleadings
are presented to and not excluded by the court, the motion must
be treated as one for summary judgment under Rule 56," and
"[a]ll parties must be given a reasonable opportunity to present
all the material that is pertinent to the motion." FED. R. CIV.
P. 12(d). However, the "district court has complete discretion
to either accept or exclude the evidence." Gen. Retail Servs.,
Inc. v. Wireless Toyz Franchise, LLC, 255 F. App'x 775, 783 (5th
Cir. 2008).

   III. Analysis

   Lending Love asks the Court to dismiss each count of the
lawsuit with respect to Lending Love. [ECF No. 39] at 4. It
claims that the amended complaint "while replete with vitriol,
absolutist and conclusive language, and exclamations of
'contumacious and egregious' conduct, contains insufficient
alleged facts whatsoever upon which to hang any of the
allegations or conclusions reached within the Amended Complaint
against Lending Love." Id. The Court will analyze each count
enumerated in the amended complaint individually to determine if
it can survive a Rule 12(b)(6) motion to dismiss.

A. Count 1: Breach of Contract

Lending Love explains that while "Count 1 does not appear to involve Lending Love, inasmuch as it appears to be a breach of contract claim against only Ms. Burks . . . to the extent that Count 1 seeks recovery from Lending Love, it fails to state a cause of action." Id. at 4-5. Because no contract existed between Lending Love and AFNB, Lending Love maintains that AFNB cannot assert a claim against Lending Love upon which relief may be granted, and therefore this count must be dismissed. Id. AFNB responds that Lending Love's request to dismiss Count 1 is misplaced. [ECF No. 47] at 16. While AFNB admits that the first count of its amended complaint only addresses Ms. Burks' alleged breach of her employment contract, it explains that "without Ms. Burks' breach of contract, Lending Love and Second Chance would not have become active participants with her in the scheme to freeze AFNB out of a highly competitive market and cause financial damage to AFNB." Id. at 16-17.

The Court agrees with AFNB that its breach of contract claim against Ms. Burks is plausible on its face, and therefore Lending Love's motion to dismiss it must be denied.

B.    Count 2:  MUTSA

Lending Love claims that AFNB identifies no "trade secret" under the MUTSA, and that no improper means has been shown. [ECF No. 39] at 6. The Act defines a trade secret as:

> information, including a formula, pattern, compilation, program, device, method, technique or process, that:
>> (i)    Derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use, and
>> (ii)   Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

Miss. Code Ann. § 75-26-3(d).

Furthermore, the MUTSA defines "Misappropriation" as:

(i)    Acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means; or

(ii)   Disclosure or use of a trade secret of another without express or implied consent by a person who:

1. Used improper means to acquire knowledge of the trade secret; or

2. At the time of disclosure or use, knew or had reason to know that his knowledge of the trade secret was:

a.  Derived from or through a person who had utilized improper means to acquire it;

b. Acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use; or

c. Derived from or through a person who owed a duty to the person seeking relief to maintain its secrecy or limits its use; or

3. Before a material change of his or her position, knew or had reason to know that it was a trade secret and that knowledge of it had been acquired by accident or mistake.

Miss. Code Ann. § 75-26-3(b).

Lending Love asserts that AFNB does not allege misappropriation of any trade secret as defined in MUTSA but rather "assumes malfeasance" by Lending Love and Second Chance without any evidence. [ECF No. 39] at 6. According to Lending Love, AFNB has failed to allege information that constitutes a trade secret under the act by proper means. AFNB responds that its complaint lists the following as trade secret information which Lending Love allegedly solicited: "client or customer names, projections, prospects, financial conditions, operations, assets and liabilities." [ECF No. 47] at 5 (citing [ECF No. 21] ¶ 38). It points to the Mississippi Supreme Court's decision in Fred's Stores of Mississippi, Inc. v. M&H Drugs, Inc. to support its position. 725 So. 2d 902 (Miss. 1998). In Fred's Stores, the Supreme Court of Mississippi held that a customer I.R.S. list was a trade secret under the MUTSA because it was the "'subject of efforts that are reasonable under the circumstances to maintain its secrecy.'" Id. at 911 (quoting Miss. Code Ann. § 75-26-3(d)).

The I.R.S. list contained "the patient's last name, first name, phone number, street address, city, state, zipcode, number of prescriptions filled that year, and a dollar amount of the money spent at Super D on prescriptions for the year." Id. 904. It was stored on a computer only accessible by password, printed

once a year but still maintained in the secure pharmacy area.
Id. at 911. The information was only shared outside of the
company with individual patients who requested an accounting of
their expenditures. Id.

Like the I.R.S. list, AFNB's client list is "quite
obviously a compilation of information." See id. at 910. The
information on AFNB's client list included clients' "contact
information, medical information, and financial information
. . . client referral contact information, sensitive client
health information, and employee financial and contact
information." [ECF No. 47] at 11 (citing [ECF No. 21] ¶ 8). The
content of AFNB's client list is similar to that found to
constitute a trade secret in Fred's Stores; it includes customer
and employee private information which was not shared publicly.
Furthermore, the information at issue pertained specifically to
AFNB's business as a home health services provider and was
protected under the Plaintiff's non-compete/non-solicit
provisions in its employment contracts. AFNB claims that its
client list "has an independent economic value of not being
generally known to and not being readily ascertainable by proper
means by other home health agencies, including Second Chance and
Lending Love, who could obtain economic value from its
disclosure or use." [ECF No. 21] ¶ 39. Because AFNB alleges in
its Complaint that Lending Love conspired to steal information

that (1) derived economic value from not being readily ascertainable, and (2) that was subject to reasonable efforts to keep it secret, the Court finds that AFNB has made a sufficient showing of the existence of a trade secret to survive a motion to dismiss.

Lending Love also argues that AFNB cannot make out a claim under the MUTSA because the Amended Complaint fails to allege improper means. [ECF No. 39] at 6. The MUTSA defines "improper means" as "theft, bribery, misrepresentation, breach or inducement of a breach of a duty to maintain secrecy, or espionage through electronic or other means." Miss. Code Ann. §75-26-3(a). In the Amended Complaint, AFNB alleges that Lending Love worked together with Ms. Burks to obtain AFNB's trade secrets in violation of Ms. Burks's non-compete/non-solicit agreement. This allegation sufficiently pleads improper means under the MUTSA because AFNB claims that Lending Love induced Ms. Burks to breach her duty to maintain secrecy. AFNB explains that "it is the standard industry practice among home health care providers to include non-compete/non-solicit and confidentiality provisions in their employment contracts," [ECF No. 21] ¶ 42. AFNB alleges that Lending Love, as a participant in the industry familiar with its norms, knew that such a non-compete existed and therefore "knowingly solicited trade

12

secrets, in the form of AFNB client and employee information, from Ms. Burks to purloin AFNB's clients and employees." [ECF No. 47] at 8.

AFNB has pleaded facts which, if accepted as true, state a claim for relief against Lending Love for violation of the MUTSA. Therefore, the Court DENIES Lending Love's Motion to Dismiss Count 2 of the Complaint.

C. Count 3: Intentional Interference with Employment
   Contract

Under Mississippi law, the elements of a claim for intentional interference with contract are:

> (1) intentional and willful acts, (2) calculated to cause damage to the plaintiff in his lawful business, (3) done with the unlawful purpose of causing damage and loss, without right or justifiable cause on the part of the defendant (which constitutes malice), and (4) resulting in actual damage or loss.

Grice v. FedEx Ground Package Sys., Inc., 925 So. 2d 907, 910 (Miss. Ct. App. 2006) (citing Par Industries, Inc. v. Target Container Co., 708 So.2d 44, 48(¶ 8) (Miss.1998)).

Lending Love claims that AFNB has failed to present a prima facie case of intentional interference with a contract because it supports this claim with the mere assertion that Ms. Burks worked for AFNB then left her employment; therefore, Lending Love and Second Chance must have

13

interfered with her employment contract [ECF No. 39] at 7.
According to Lending Love, AFNB has made bare allegations
that Lending Love induced Ms. Burks to violate her employment
contract with AFNB but fails to allege any facts to support
this assertion. Id. Lending Love asserts that it is a
competitor and "is entitled to use lawful means to encourage
and obtain clients." Id.

Although Lending Love is obviously not duty bound to
avoid competition with AFNB, this argument misrepresents
AFNB's claim. AFNB does not allege that Lending Love
interfered with its customer contracts, but that it
interfered with Ms. Burks's employment contract by inducing
her to violate the terms of her non-compete/non-solicit
agreement with AFNB. [ECF No. 21] ¶ 51. AFNB alleges that
Lending Love paid Ms. Burks, either as an employee or an
independent contractor, to unlawfully bring clients and
employees from AFNB to Lending Love. Id. ¶ 52.

AFNB successfully pleads a prima facie case for
intentional interference of contract. First, it alleges that
Lending Love's interference with Ms. Burks's contract was
intentional, explaining that "[i]t is standard industry
practice for home health care providers to include non-
compete/non-solicit provisions to their employee contracts"

14

and that Lending Love knew that Ms. Burks was a former employee of AFNB. Id. ¶ 56. As competitors in the same small market, Lending Love allegedly knew that Ms. Burks was under an agreement not to compete and nevertheless induced her to violate that agreement. Id. ¶ 58. If the Court accepts AFNB's assertions as true, it has met the first prong.

Secondly, AFNB explains that its Complaint alleges that "Lending Love knowingly fostered a business relationship with AFNB's former employee in a calculated bid to maximize their company's profit and freeze AFNB out of a small and highly competitive market." [ECF No. 47] at 13. If Lending Love did induce Ms. Burks to violate her employment contract, such action was calculated to impair AFNB's business by causing loss of clients and employees. Third, there was no "right or justifiable cause" underlying these alleged actions; and fourth, AFNB alleges the actual damage and loss of over forty clients. [ECF No. 21] ¶ 52.

Because AFNB successfully makes out a prima facie case for intentional interference with contract, Lending Love's motion to dismiss this claim is DENIED.

D. Count 4: Tortious Interference with Business
   Relations

"A cause of action exists [for tortious interference with
business relations] where one engages in some act with malicious
intent to interfere and injure the business of another, and
injury does in fact result." Cenac v. Murry, 609 So. 2d 1257,
1271 (Miss. 1992). A "plaintiff must also show (1) a loss, and
(2) that defendant's conduct caused the loss." Id. (citing
Prosser & Keeton, The Law of Torts, § 130, 141 (5th ed.
Supp.1988)). Lending Love claims that while AFNB did suffer the
loss of clients and revenue, it does not plead sufficient facts
to plausibly allege that Lending Love's conduct caused the loss.
[ECF No. 39] at 8. AFNB explains that it alleges that Lending
Love knowingly and willfully induced Ms. Burks to violate her
employment contract, and that this inducement directly caused
AFNB's loss of clients and revenue. [ECF No. 47] at 13-14.
AFNB's complaint claims that "as of the filing of this Amended
Complaint, the defendants, in concert with one another, have
induced over forty (40) AFNB clients to no longer receive their
home health services from AFNB." [ECF No. 21] ¶ 66. AFNB
successfully makes out a prima facie case for tortious
interference with business relations. Therefore, Lending Love's
motion to dismiss this claim is DENIED.

IV.  Conclusion

     Accordingly,

    IT IS HEREBY ORDERED that Defendant Lending Love's Motion to Dismiss is DENIED.

    SO ORDERED this 31st day of July, 2025.

                    /s/ David Bramlette
                    DAVID C. BRAMLETTE III
                    UNITED STATES DISTRICT JUDGE